**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

UNITED STATES OF AMERICA        :

           v.                      :       No.: 3:24-CR-281
                                          (JUDGE J. SAPORITO)

CHRISTOPHER J. CORDES        :

## <u>SUPPLEMENT TO SENTENCING MEMORANDUM</u>
## <u>ON BEHALF OF CHRISTOPHER CORDES</u>

Elena Fast, Esq.
The Fast Law Firm, P.C.
521 Fifth Avenue, 17 Floor
New York, New York 10175
Phone: (212) 729-9494
Email: elena@fastlawpc.com
*Pro Hac Vice*

Frank Nocito, Esq.
Law Office of Frank W. Nocito, LLC
63 Pierce Street
Kingston, Pennsylvania 18704
Phone: (570) 559-5604
Email: fwnocito@gmail.com

*Counsel for Christopher Cordes*

## I.  ADDITIONAL MATERIALS

On January 22, 2026, Defense counsel filed their Sentencing Memorandum on behalf of Mr. Christopher Cordes. After the Sentencing Memorandum was filed, Defense counsel received a Federal Bureau of Prisons recommendation report from Jack Donson, Founder of My Federal Prison Consultant, which is hereto attached as *Defense Exhibit H.*

Dated: May 13, 2026
        New York, New York

Respectfully submitted,

s/ Elena Fast                               /s/Frank W. Nocito
Elena Fast, Esq.                            Frank W. Nocito, Esq.
The Fast Law Firm, P.C.                     Frank W. Nocito, LLC
521 Fifth Avenue, 17 Floor                  63 Pierce Street
New York, NY 10175                          Kingston, PA 18704
Phone: (212) 729-9494                       Phone: (570) 559-5604
Email: elena@fastlawpc.com                  Email: fwnocito@gmail.com

*Counsel for Christopher Cordes*

cc: All counsel of record (via email)

# DEFENSE EXHIBIT H

United States v. Christopher Cordes
24-CR-281

## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES** | : | **Case No.: 3:cr-24-281** |
| | : | |
| **v.** | : | |
| | : | |
| **CHRISTOPHER J. CORDES** | : | **Judge: Honorable Joseph F. Saporito Jr.** |

## AFFIDAVIT OF JACK DONSON

I, Jack Donson, hereby declare under penalty of perjury that the following is true and correct.

## STATEMENT OF EXPERTISE

I am the Founder of My Federal Prison Consultant, which I started after a career with the Federal Bureau of Prisons (BOP). I am also the executive director of a non-profit organization called the Federal Prison Education and Reform Alliance. I provide consulting, training, and expert witness testimony on federal prison issues. I have worked directly with federal offenders for over thirty-seven years and have testified in district courts throughout the country.

I was employed by the BOP for twenty-three years working directly with inmates and staff in security classification, correctional programs, and treatment. I actively follow policy initiatives and routinely attend training conferences, including the U.S. Sentencing Commission conference, which includes a presentation by BOP staff on current federal prison issues. I am a member of both the American Bar Association (ABA) and National Association of Criminal Defense Lawyers' (NACDL) corrections committees. I have authored articles on federal prison matters in national print media, legal periodicals and ABA publications.

During my career, I worked directly with inmates as a Correctional Treatment Specialist (case manager & case management coordinator). I was responsible for counseling, security classification, inmate discipline, program placement/evaluation, and re-entry. During my career, I completed hundreds of case management and leadership related courses. I was also assigned collateral administrative responsibilities, including training case management staff, mentoring, local policy writing, conducting facility audits, and overseeing institutional programs. I have worked in minimum (camp), low, medium, administrative (pre-trial and high security), and Witness Security (PCU) units. On several occasions, I was assigned to the BOP Philadelphia Regional Office (NERO) and the New York City Community Corrections Office. I have expertise with U.S. Parole Commission policy and process and BOP sentence computations. Prior to working for the federal government, I was employed in the Commonwealth of Pennsylvania as a Probation & Parole Officer where I wrote pre-sentence investigations, supervised the work release program, and managed a caseload of adult and juvenile offenders.

My skillset is unique, policy-focused, and has been molded by my regular interaction with BOP staff and administrators as well as inmates in the trenches of the federal prison system. This interaction has continued during my retirement through daily contacts with attorneys, non-

governmental organizations, and email correspondence with incarcerated people from around the prison system. In my role with FedCURE as their National Director for Inmate Programs and Services, I regularly interacted with BOP central office staff regarding prison issues and was solicited for feedback on legislation such as the First Step Act. I have conducted First Step Act related training for the NACDL, AOUSC, and federal defender organizations. I recently attended meetings with the GAO regarding the First Step Act and DOJ for the Access to Justice initiative related to BOP legal communication.

I have been qualified as an expert witness in accordance with Federal Rule 702 (*Daubert* Standards) and have never been denied the ability to testify as an expert witness on BOP related issues.

I hold a bachelor's degree in Sociology/Anthropology and a Master of Science Degree in Criminal Justice. Aside from consulting, I was a Lecturer at Marywood University for several years and taught Criminal Justice courses, including one entitled The American Prison. A true and correct copy of my *Curriculum Vitae* is attached. I have personal knowledge of the facts stated herein and can testify competently thereto if called as a witness in this matter.

## SCOPE OF REVIEW

I have been asked to review the pre-sentence investigation and psychological evaluation to provide my professional opinion regarding the difficulties Mr. Cordes faces in a federal prison setting given his conviction of sex offenses in combination with his former capacity as a law enforcement officer. I have assessed his security classification and correctional programs needs to determine the most appropriate facility designation for his rehabilitation and safety. I offer my opinion from a BOP correctional treatment perspective.

## SUMMARY OF FINDINGS

Mr. Cordes will encounter several challenges during a term of incarceration. His former law enforcement capacity will likely result in a designation outside the northeast region to provide for his protection. Law enforcement officers are vulnerable in the prison setting and are often targets for assault and/or extortion. Similarly, sex offenders are equally despised within the federal prison subculture, so he will encounter both issues making his term of incarceration more stressful and difficult to navigate, especially if his classification is medium or high security. Therefore, it would be practical for the court to make a specific judicial recommendation for his programming in the safest prison environment because of the potential of predation.

## FACILITY & INMATE CLASSIFICATION (BRAVO)

From a designation perspective, the BOP classifies facilities into several categories including minimum security (camp), low and medium security federal correctional facilities, (FCIs), high security U.S. penitentiaries (USP) and administrative (MCC/MDC/FDC & Medical Centers). In recent years, the agency has developed "*satellite*" low security facilities and various specialized restrictive housing unit programs, including reintegration housing units (RHU), special management units (SMU), and communication management units (CMU). The last BOP SMU

2

was recently closed after it became the focus of abusive correctional practices due to the murders of several inmates housed there. [1]

Inmates also have a security classification, which is based on a security point system in combination with public safety factors (PSFs) to determine their required level of control and supervision. The inmate classification tool is known as "BRAVO" (Bureau Risk Assessment Verification and Observation). Some of the factors used in determining a person's security classification include their age, criminal history points, violence and/or escape history, and characteristics of the instant offense. Each factor has a corresponding point value, which are then totaled to determine an overall security level. Below is a chart based on the BOP classification manual (CPD/CPB, Number P5100.08, Inmate Security Designation and Custody Classification).[2]

| Security Level | Male | Female |
|---|---|---|
| MINIMUM | 0-11 Points | 0-15 Points |
| LOW | 12-15 Points | 16-30 Points |
| MEDIUM | 16-23 Points | N/A |
| HIGH | 24 + Points | 31 + Points |

After reviewing the PSR, I have estimated Mr. Cordes will be assigned nine (9) security points, which is ordinarily minimum security. However, sex offenders are assigned a public safety factor (PSF) that precludes a minimum security (camp) designation. (See exhibit one). It should be noted there are three PSF's that can automatically elevate a person's security level based on the length of the sentence. Inmates who are required to serve 10 years or more are automatically low security, 20 years are automatically medium security, and 30 years are automatically high security and designated to a U.S. penitentiary. A medium or high security designation will increase the risk of assault and protective custody.

While minimum security prisons are typically docile environments involving dormitory type living arrangements with non-violent offenders, secure FCIs involve offenders with more criminal orientation and history serving sentences up to twenty-years. While the BOP has the discretion to designate inmates above or below their scored classification in accordance with the classification manual, it is extremely unlikely they will apply it in this case given the nature of Mr. Cordes' conduct.

## SEX OFFENDER VULNERABILITY

Regardless of the specific security level environment, there are certain inmate sub-cultural practices that occur within a prison setting that will be difficult for Mr. Cordes to navigate. An

---

[1] https://www.washlaw.org/wp-content/uploads/2023/07/Cruel-and-Usual-An-Investigation-Into-Prison-Abuse-at-USP-Thomson.pdf

[2] https://www.bop.gov/policy/progstat/5100_008cn.pdf

3

unfortunate reality in the federal prison system is that when new inmates arrive, they are immediately approached by other inmates to "*show their papers*" in a vetting process. This process is done to identify cooperators (aka: "*rats*") and sex offenders (aka: "*chomos*"). When inmates are unable to produce court documents, other inmates will go as far as having people in the community conduct Google, LexisNexis, and/or PACER searches to determine the crime and look for irregularities in docket entries, case information, etc. One of the goals of the vetting process is the monetary aspect whereby individual inmates as well as gang members extort vulnerable inmates to offer them protection.

The vetting process has always been problematic within the prison system and as recently as November 18, 2020, a high severity disciplinary infraction was added to the inmate code of conduct "ACT # 231- *Requesting, demanding, pressuring, or otherwise intentionally creating a situation, which causes an inmate to produce or display his/her own court documents for any unauthorized purpose to another inmate.*"

It is unknown how Mr. Cordes will react when he is vetted, which raises the possibility of protective custody and isolation in the special housing unit known as the SHU. The SHU is often referred to as solitary confinement and involves a separate unit where inmates are locked in their cells for 23 hours daily, with one hour of recreation that is ordinarily done in a small room or outdoor cage. They are fed in their cells, restricted to one telephone call every thirty days, and have additional visiting limitations. SHU is also the area within the prison where most suicides occur.

Confinement to a SHU can come about when an inmate voluntarily requests protective custody (PC) or when staff perceive an inmate is at risk for victimization. Due to the increase of protection cases, the BOP developed a pilot reintegration housing unit known as the RHU in 2016, which subsequently expanded to several facilities. A previous BOP operations memorandum defined the unit as follows: "*The RHU targets male inmates identified as verified or unverified protective custody cases, who consistently refuse to enter general population, ordinarily at multiple locations.*" A concern with the RHU program is that inmates often need to repeat a cycle of isolation, sometimes for months at a time before being transferred to an RHU. Prolonged isolation is to discourage the practice of inmates manipulating a transfer who have no legitimate/verified threat. RHUs are very restrictive, self-contained units, who do not interact with the general population of the facility. They are undesirable because of the limited programs, services and outdoor recreation opportunities. In February of 2024, former BOP Director Collette Peters testified before the Judiciary Committee that there were nearly 11,000 inmates in restrictive housing. [3] Aside from the protection of inmates, one of the main goals of the RHU is to eventually allow prisoners to assimilate back into the general population of a different facility.

Inmates who do not succumb to the pressure of requesting protective custody after being threatened often move within the population with other similarly situated inmates for safety, referred to as a "*car*." A car is a group of inmates that collectively support and protect each other within the concept of that there is safety in numbers. They also avoid certain areas of a facility that are void of cameras and staffing. Mr. Cordes will also face difficulty in being accepted into a car should his law enforcement capacity become known.

---

[3] https://www.justice.gov/d9/2024-12/2024.07.23_colette_peters.pdf

4

Former law enforcement officers are not only targets of other inmates, but they are also looked down on by some staff because of the betrayal of their oath of office. *"Dirty cops"* are despised within the general law enforcement community, which includes BOP correctional officers.

## LAW ENFORCEMENT MANGEMENT

The BOP recognizes the challenges law enforcement officers have in a correctional setting and provides further monitoring and protection within the Central Inmate Monitoring Program referred to as "CIM."[4] Inmates meeting criteria for specific categories are more carefully monitored for further protections and overall inmate management. The CIM category appropriate for Mr. Cordes is called *"Special Supervision."* In my experience working for the BOP and since retirement, the BOP designates law enforcement officials outside the region of their jurisdiction, especially when they are directly involved in arrests. When I worked for the agency in the northeast region, I would often receive inmates on my caseload from the mid-Atlantic and even south-east region who were former law enforcement and correctional officers. While these measures are designed to offer further protection, the BOP practices for adhering to policy have been under more scrutiny than ever given staff shortages.

In addition, inmates with CIM assignments require an activity clearance to participate in community programs like residential re-entry center placement. It is uncertain whether Mr. Cordes will receive a clearance to be placed in a contract facility within the area where he worked in a law enforcement capacity. Ordinarily, inmates like Mr. Cordes who are not eligible for First Step Act credits have the potential for up to 12 months residential re-entry center placement.

## CORRECTIONAL TREATMENT PROGRAMS

From a case management perspective, Mr. Cordes has no mandatory educational requirements. Based on the offense and psychological report and recommendations, it is likely BOP psychology staff recommend the BOP's Sex Offender Treatment Program (SOTP). It should be noted that the psychological report refers to the program is located at FMC Butner, but Butner no longer delivers that program since it has been designated as the Civil Commitment Unit for sexually dangerous prisoners in accordance with the Adam Walsh Act.

More specific information on the SOTP is included in the policy[5] and the BOP website[6] describes the two programs as follows:

*Residential Sex Offender Treatment Program*
Residential treatment involves high intensity programming for a period of 12 to 18 months. The Bureau provides this program at USP Marion in Illinois and at FMC Devens in Massachusetts. Participants benefit from a therapeutic community on a residential housing unit where they work

---

[4] www.bop.gov/policy/progstat/5180_005.pdf
[5] https://www.bop.gov/policy/progstat/5324_010.pdf
[6] https://www.bop.gov/inmates/custody_and_care/sex_offenders.jsp

5

to reduce their risk of future offending. Offenders receive treatment five days per week. This treatment targets offenders with an elevated risk of reoffending.

*Non-residential Sex Offender Treatment Program*
Non-residential treatment consists of outpatient groups meeting 2-3 times per week for several hours. Program completion takes 9-12 months. The Bureau offers this moderate intensity program at several institutions, listed below. Participants learn basic skills and concepts to help them understand their past offenses and to reduce risk of future offending. This treatment is offered to offenders evaluated to have low to moderate risk of reoffending.

The residential SOTP is only offered in two facilities including FMC Devens, Massachusetts and Marion, Illinois. The more appropriate program based on the documentation reviewed would be for the Non-residential SOTP that is offered in various facilities around the country.

## CONCLUSION

Mr. Cordes' former law enforcement capacity and offense behavior present challenges and risks in the federal prison environment, especially in the higher security environments where he may be subject to assault. To mitigate the risks, it would be practical for the court to make a specific recommendation, which is non-binding, to provide for his safety and correctional treatment. The BOP attempts to accommodate judicial recommendations and has historically tracked compliance at over seventy percent. The most practical language for such a recommendation would be as follows:

*"The court recommends Mr. Cordes be designated to FCI Elkton for participation in the non-residential sex offender treatment program. Should the BOP determine Elkton is too close to where he was employed as a law enforcement officer, the SOTP at FCI Englewood or FCI Seagoville are recommended.*

Executed on the 8th day of May 2026.

Jack T. Donson, President and Founder _____

6

BP-A0337
JUNE 10

**INMATE LOAD AND SECURITY DESIGNATION** CDFRM

**U.S. DEPARTMENT OF JUSTICE**                                    **FEDERAL BUREAU OF PRISONS**

| INMATE LOAD DATA |
|---|

**1. REGISTER NUMBER:** 42709-511

| 2. LAST NAME | | 3. FIRST NAME | | 4. MIDDLE | | 5. SUFFIX |
|---|---|---|---|---|---|---|
| CORDES | | Christopher | | J | | |

| 6. RACE | 7. SEX | 8.ETHNIC ORIGIN | | 9. DATE OF BIRTH | |
|---|---|---|---|---|---|
| C | M | NH | | ▄▄▄▄▄▄▄ | |

**10. OFFENSE/SENTENCE**
Multiple- SO related (5 counts) Life Guidelines

| 11. FBI NUMBER | 12. SSN NUMBER |
|---|---|
| FDMD8XCP1 | |

| 13. STATE OF BIRTH | 14. OR COUNTRY OF BIRTH | 15. CITIZENSHIP |
|---|---|---|
| | | US |

**16. ADDRESS-STREET**

| 17. CITY | 18. STATE | 19. ZIP | 20. OR FOREIGN COUNTRY |
|---|---|---|---|
| Scranton | PA | 18509 | |

| 21. HEIGHT | 22. WEIGHT | 23. HAIR COLOR | 24. EYE COLOR |
|---|---|---|---|
| FT        IN | LBS | | |

**25. ARS ASSIGNMENT:**

| SECURITY DESIGNATION DATA |
|---|

| 1. JUDGE | 2. REC FACILITY | 3. REC PROGRAM | 4. USM OFFICE |
|---|---|---|---|
| Hon. Michael S. Nachmanoff | | | D/SC |

| 5. VOLUNTARY SURRENDER STATUS        0 = NO        (-3)  YES | |
|---|---|
| IF YES, MUST INDICATE:    5a. VOLUNTARY SURRENDER DATE:<br>5b. VOLUNTARY SURRENDER LOCATION: | 0 |

**6. MONTHS TO RELEASE :**

| 7. SEVERITY OF CURRENT OFFENSE | 0 = LOWEST<br>1 = LOW MODERATE | 3 = MODERATE<br>5 = HIGH | 7 = GREATEST | 5 |
|---|---|---|---|---|

| 8. CRIMINAL HISTORY SCORE | 0 = 0-1<br>2 = 2-3 | 4 = 4-6<br>6 = 7-9 | 8 = 10-12<br>10= 13 + | |
|---|---|---|---|---|
| 8a. SOURCE OF DOCUMENTED | — PRESENTENCE INVESTIGATION REPORT or | | — NCIC III | 0 |

| 9. HISTORY OF VIOLENCE | | NONE | >15 YEARS | 10-15 YEARS | 5-10 YEARS | <5 YEARS | |
|---|---|---|---|---|---|---|---|
| | MINOR | 0 | 1 | 1 | 3 | 5 | |
| | SERIOUS | 0 | 2 | 4 | 6 | 7 | 0 |

| 10. HISTORY OF ESCAPE OR ATTEMPTS | | NONE | >15 YEARS | >10 YEARS | 5-10 YEARS | <5 YEARS | |
|---|---|---|---|---|---|---|---|
| | MINOR | 0 | 1 | 1 | 2 | 3 | |
| | SERIOUS | 0 | 3(S) | 3(S) | 3(S) | 3(S) | 0 |

| 11. TYPE OF DETAINER | 0 = NONE<br>1 = LOWEST/LOW MODERATE | 3 = MODERATE<br>5 = HIGH | 7 = GREATEST | 0 |
|---|---|---|---|---|

| 12. AGE | 0 = 55 and over<br>2 = 36 through 54 | 4 = 25 through 35<br>8 = 24 or less | 4 |
|---|---|---|---|

| 13. EDUCATION LEVEL | 0 = Verified High School Degree or GED<br>1 = Enrolled in and making satisfactory progress in GED Program<br>2 = No verified High School Degree/GED and not participating in GED Program | |
|---|---|---|
| 13.a HIGHEST GRADE COMPLETED | | 0 |

| 14. DRUG/ALCOHOL ABUSE | 0 = NEVER/>5 Years | 1 = <5 Years | 0 |
|---|---|---|---|

| 15. SECURITY POINT TOTAL | 9 |
|---|---|

| 16. PUBLIC SAFETY FACTORS | A-NONE<br>B-DISRUPTIVE GROUP (males only)<br>C-GREATEST SEVERITY OFFENSE (males only)<br>F-SEX OFFENDER<br>G-THREAT TO GOVERNMENT OFFICIALS<br>H-DEPORTABLE ALIEN | I-SENTENCE LENGTH (males only)<br>K-VIOLENT BEHAVIOR (females only)<br>L-SERIOUS ESCAPE<br>M-PRISON DISTURBANCE<br>N-JUVENILE VIOLENCE<br>O-SERIOUS TELEPHONE ABUSE | F |
|---|---|---|---|
| | | | I |
| | | | / |

**17. REMARKS**
Low security (9 points) due to sex offender PSF- Ineligible for minimum security camp due to the public safety factor and potential sentence length.  Goal(safety) to avoid the USP & designation to a SO treatment facility.

**18. OMDT REFERRAL (YES/NO)**        n

**EXHIBIT ONE**

**FILE IN SECTION 2 UNLESS APPROPRIATE FOR PRIVACY FOLDER**         **SECTION 2**

PDF                                    Prescribed by P5100                    Replaces BP-S337 of FEB 02